UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESPIRIDION FERNANDEZ, | No. C 11-1006 SI (pr) |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| P. CURRY; et al., | |
| Defendants. | |

## INTRODUCTION

Espiridion Fernandez, an inmate currently housed at Centinela State Prison, has filed a pro se civil rights action under 42 U.S.C. § 1983. The court now reviews the complaint pursuant to 28 U.S.C. §1915A.

## BACKGROUND

Prisoners in California Department of Corrections facilities are subject to a classification process that attempts to "take into consideration the inmate's needs, interests and desires, his/her behavior and placement score in keeping with the department and institution's/facility's program and security missions and public safety." Cal. Code Regs. tit. 15, § 3375(b). The process assigns numeric values for various factors (such as the commitment offense, prior criminal activity, in-prison disciplinary history, age, and gang affiliation), and the inmate is assigned to a facility based on his classification score, generally with a higher score resulting in placement in a more restrictive facility.

The provision that concerns Fernandez provides: "an inmate serving any life term shall not be housed in a Level I or II facility if any of the following case factors are present: (A) The

commitment offense involved multiple murders, unusual violence or execution-type murders or received high notoriety. (B) A history of multiple walkaways, an escape from a secure perimeter or an escape with force or threat of force." 15 Cal. Code Regs. § 3375.2(a)(7).

In this action, Fernandez alleges that a classification committee improperly determined that Fernandez's commitment offense was an execution-style murder and thus met one of the criteria under 15 California Code of Regulations § 3375.2(a)(7). As a result of this allegedly wrongful classification, Fernandez now must be housed in a Level III prison instead of a Level II prison for which he otherwise would be eligible. Fernandez requests an injunction compelling prison officials "to rely on facts proven beyond a reasonable doubt found by jury or judge" to make classification decisions and compelling them to re-consider his classification. Complaint, p. 3. He also seeks damages.

Fernandez alleges that, although he "is committed for a murder the trial transcripts nor the prosecution were able to establish an adjudication that Plaintiff shot the victim in an execution way." Complaint, p. 3a. The attachments to his complaint suggest there is such evidence, even if there is not an adjudication that it was an execution-style murder. The probation officer's report – which Fernandez claims is "inaccurate," id. at 3b – stated that the victim was sitting in his car when he was shot once in the left side of his head. Complaint, Ex. D. The report also described a motive of jealousy for the shooting. Complaint, Ex. D. That probation officer's report further stated that Fernandez was convicted of first degree murder and was found to have personally used a firearm in the commission of the offense. And the probation officer's report reported that a witness stated that Fernandez had told an acquaintance that he stopped a man who was saying bad things about him, walked up to him, put a gun to his head, and fired the gun. Another attachment to Fernandez's complaint is an excerpt of a reporter's transcript showing a witness testifying that the victim was slumped over in the driver's seat of a parked vehicle with blood coming from his right jaw area, and a stipulation that the victim died from a gunshot wound to the head (albeit no stipulation that it was a criminal act that caused that wound). Complaint, Ex. A.

2

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.   Classification Decision

A prisoner has no federal due process right to a particular classification score. Interests protected by the Due Process Clause may arise from two sources--the Due Process Clause itself and laws of the states. See Meachum v. Fano, 427 U.S. 215, 223-27 (1976). Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. See Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes in conditions relating to classification and reclassification do not implicate the Due Process Clause itself. See Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing Moody v. Dagget, 429 U.S. 78, 88 n.9 (1976)) (no constitutional right to particular classification). Deprivations authorized by state law that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-87. Although California has created a regulatory scheme from which

3

a protected liberty interest in classification and custody designation might arise, the liberty in question is not protected by the Due Process Clause because the deprivation of a correct classification or custody designation cannot be characterized as one of "real substance," i.e., it does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, or "inevitably affect the duration of [a] sentence," id. at 487.

The complaint fails to state a claim for a due process violation because the allegedly incorrect classification determination did not implicate a liberty interest of real substance. The result of the allegedly incorrect classification determination is that Fernandez will be housed in a Level III rather than Level II facility. A facility level change such as that alleged does not amount to an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life. And the change will not inevitably affect the duration of Fernandez's sentence, as he would have an indeterminate sentence of at least 25 to life on his murder conviction. A similar situation was found not to implicate a protected liberty interest in Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007), where the classification decision resulted in the plaintiff being housed at a Level IV prison rather than Level III prison. Myron explained that, on the record, the conditions in a level IV facility did not present an atypical and significant hardship. "There is no showing that the conditions at level IV differ significantly from those 'imposed upon inmates in administrative segregation and protective custody' –a distinction Sandin held to be relevant." Myron, 476 F.3d at 718. If the greater restrictions of Level IV do not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life, it follows that the lesser restrictions of Level III also would not be such a hardship. The due process claim must be dismissed because there was no protected liberty interest implicated by the classification decision that resulted in Fernandez being housed in Level III facility.

Even if a protected liberty interest was implicated by the classification decision, the claim would be dismissed because Fernandez's complaint and attachments thereto plainly show his claim to be meritless. The nub of his claim is that prison officials relied on an inaccurate probation officer's report and did not have an adjudication on proof beyond a reasonable doubt

4

1 that the murder was execution-style. Due process does not require such a high level of proof for
2 prison administrative decisions. Indeed, judicial review of a prison administrative decision is
3 limited to determining whether there is some evidence from which the conclusion of the
4 administrative tribunal could be deduced. Superintendent v. Hill, 472 U.S. 445, 455 (1985). An
5 examination of the entire record is not required nor is an independent assessment of the
6 credibility of witnesses or weighing of the evidence. See id.  Here, Fernandez's first degree
7 murder conviction and sentence enhancement for personal use of a firearm, together with the
8 probation officer's report describing the killing plainly would satisfy the "some evidence"
9 standard if it applied. Fernandez disagreed with the probation officer's report, but that does not
10 mean that prison officials could not rely on it.

## B.  Inmate Appeals

Fernandez also named as defendants various prison officials who failed to find in his favor on his administrative appeals from the classification decision. The failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). The denial of an inmate appeal is not so severe a change in condition as to implicate the Due Process Clause itself and the State of California has not created a protected interest in an administrative appeal system in its prison. California Code of Regulations, title 15 sections 1073 and 3084 grant prisoners in the county jails and state prisons a purely procedural right: the right to have a prison appeal. The regulations simply require the establishment of a procedural structure for reviewing prisoner complaints and set forth no substantive standards; instead, they provide for flexible appeal time limits, see Cal. Code Regs. tit. 15, § 3084.8, and, at most, that "[n]o reprisal shall be taken against an inmate or parolee for filing an appeal," id. § 3084.1(d). A provision that merely provides procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. See Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993); see also

Antonelli, 81 F.3d at 1430 (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause).

Fernandez had no federal constitutional right to a properly functioning appeal system. An incorrect decision on an administrative appeal or failure to process the appeal in a particular way therefore did not amount to a violation of his right to due process. The claims concerning the handling of the administrative appeals are dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

The complaint fails to state a claim upon which relief may be granted. Leave to amend will not be granted because it would be futile. This action is dismissed. The clerk shall close the file.

IT IS SO ORDERED.

Dated: June 19, 2011

_____
SUSAN ILLSTON
United States District Judge

6